Jenkins v. International Bank.

v.

THE INTERNATIONAL BANK ET AL.

1. WRIT OF ERROR—WHEN AN ACTION.—Where a plaintiff, by his writ of error, shall recover, or be restored to any personal thing, as debt, damage, or the like, then the proceeding is to be regarded as in the nature of a suit or

action, and in such cases a plea of release of all actions, real and personal, is good.

2. WHEN NOT AN ACTION.—But where by a writ of error the plaintiff shall not be restored to any personal or real thing, a release of all actions real or personal is no bar.

3. EFFECT OF WRIT OF ERROR.—The effect of a writ of error is simply to bring the record into court and submit the judgment of the inferior tribunal to examination. It does not in any manner act upon the parties; it acts only upon the record.

4. BANKRUPT LAW—RIGHT OF ASSIGNEE TO SUE—LIMITATION.—The section of the bankrupt law providing that suits may be brought by an assignee, and limiting the time within which he may sue, does not embrace every species of suit or action. It embraces only such suits as must be between an assignee and some person who claims an adverse interest in the property or subject-matter, and they must involve or concern some property or right of property which is either transferable to or has become vested in such assignee. They must be based upon a cause of action. *Held*, the writ of error in this case was not within the statute, because it was only defensive, and this court could render no judgment upon the merits of the controversy thereunder.

5. WRIT OF ERROR NOT BARRED BY LIMITATION.—Where there was a proceeding in the trial court for the foreclosure of a mortgage, to which the defendant had answered and filed a cross-bill setting up usury, and praying for redemption from the mortgage, and there was final judgment denying the equities of the defendant, an assignee in bankruptcy of such defendant may have a writ of error to bring up the judgment of the lower court for examination, notwithstanding two years have elapsed since the entry of such decree, before suing out such writ.

ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding. Opinion filed November 11, 1881.

Mr. W. T. BURGESS, for plaintiff in error; contending that there is in this case no adverse interest, it being a bill for foreclosure, and the right to foreclose, and the right to redeem are commensurate, cited Cleveland v. Boerum, 24 N. Y. 613; Price v. Phillips, 3 Rob. 448; Smith v. Crawford, 4 N. B. R. 38; Will v. Stickney, 15 N. B. R. 23; Bump's Bankruptcy, § 5,057; 2 Hilliard on Mortgages, § 2; Locke v. Caldwell, 91 Ill. 417.

A suit merely to collect a debt does not fall within the statute limitation: Bump's Bankruptcy, 545.

A suit to foreclose a mortgage is only a process to collect a

debt: Pollock v. Maison, 41 Ill. 516; March v. Mayers, 85 Ill. 177; Locke v. Caldwell, 91 Ill. 417; Emory v. Keighan, 88 Ill. 482.

Messrs. Rosenthal & Pence, for defendants in error; that a writ of error is a suit, cited Ripley v. Morris, 2 Gilm. 381; Hickman v. Haines, 5 Gilm. 20; Smith v. Robinson, 11 Ill. 119; Roberts v. Fahs, 32 Ill. 474; 1 Tidd's Pr. *1196 ; Powell on Appellate Proceedings, 46; Union Canal Co. v. Woodside, 11 Pa. St. 176; Weston v. City Council, 2 Pet. 449; Bailey v. Glover, 21 Wall. 346; Wadhams v. Gay, 73 Ill. 415; Freeman on Judgments, § 205.

Where it appears upon the face of the record that the bar of the statute can be applied, it can be insisted upon by motion or demurrer: Henry Co. v. Winnebago Drain Co. 52 Ill. 454; Humbert v. Trinity Church, 7 Paige, 195; Bailey v. Glover, 21 Wall. 341; Story's Eq. Pl. §§ 503, 751.

The case falls within the limitation of the statute: Cleveland v. Boerman, 24 N. Y. 613; Gifford v. Helms, 98 Ill. 252; Cogdell v. Exum, 69 N. C. 464; Wilterbuyer v. Phillips, 2 Wood, 115; Clark v. Hackett, 1 Cliff. 269.

McAllister, J.   This case comes here upon a writ of error, sued out more than two years after the entry of final decree below, by Jenkins, as assignee in bankruptcy of Samuel J. Walker, the mortgagor and one of the defendants below, in a suit in equity, to foreclose a mortgage. Jenkins assigns errors of law; and, to such assignment, defendants in error have interposed a plea of confession and avoidance based upon the provision of the bankrupt act, prescribing a limitation of two years to the bringing suits by such assignees in certain cases. To that plea the plaintiff in error has filed a demurrer; and upon joinder therein, the question arising is solely as to the sufficiency of that plea.

In order to determine whether such limitation of the bankrupt act is applicable to this case, a brief statement of so much of it as is material, and as shown by the record, will be necessary. The position of Lowenthal and the International Bank in the court below, was in substance and legal effect, and

without entering into detail of particulars, that of mortgagees and complainants in a bill in equity originally brought March 19, 1875, against Samuel J. Walker, as mortgagor, and against other parties as subsequent incumbrancers or purchasers, to foreclose a mortgage alleged to have been made by Walker in December, 1870, to secure his note ·made December 15, 1870, for fifteen thousand dollars and interest, payable in one year to the International Mutual Trust Company, that being then the name of the corporation now known as the International Bank; which note, it was alleged, had been assigned by the latter to Lowenthal. Such mortgage was also created to secure the bank upon all notes made by said Samuel J., as well as those made by H. H. Walker, which said bank might hold, or any other or others it might negotiate for account of said Samuel J. Walker. The latter, by his answer, admitted the mortgage, but averred that Lowenthal was not a *bona fide* holder of said note; that it in fact belonged to the bank; that at all events it was transferred after maturity. He also set up, by way of defense, that all his transactions with the bank, out of which his supposed indebtedness to it arose, were corrupt and usurious contracts for the loan and forbearance of money; that they ran through a series of years, were all under one and the same usurious agreement, under and in pursuance of which he had paid to the bank, from time to time, large sums of usurious interest, amounting in the aggregate to several hundred thousand dollars; which sums, he insisted, should be applied towards the principal and lawful interest of and upon such loans, so far as the same remained otherwise unpaid. He also filed a cross-bill setting up the same matters, in substance, praying that an account might be taken and stated between him and said International Bank, and, amongst other things, for redemption from said mortgage. Issue having been joined by answers and replications, the court below, July 6, 1877, made a decretal order referring the case to a master in chancery, to ascertain the amount due therein, declaring the principles which should govern such master in ascertaining the rights of the parties and the amount due the parties complainant.

Such order, amongst other things, declared that " the said

master is further directed not to consider the question of usurious payments of interest upon any of said notes."

The master having filed his report, a final decree was entered April 25th, 1878, which found the amount due from Walker to Lowenthal to be $18,775, and that to the bank $172,474; which confirmed the master's report, dismissed Walker's cross-bill for want of equity, and directed a sale of the mortgaged property.

. Walker was afterwards adjudicated a bankrupt, and Jenkins appointed assignee, who, as such, sued out this writ of error April 21, 1881, and assigned error of law upon said interlocu. tory and final decree; and defendants in error filed a plea of Statute of Limitations under Section 5,057 of the bankrupt act. To that plea plaintiff in error demurred. That brings before us the sufficiency of that plea as the sole question in the case, though its decision involves incidental points of great difficulty.

That section is:

"No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when *the cause of action accrued* for or against such assignee. And this provision shall not, in any case, revive *a right of action* barred at the time an assignee is appointed."

Now, when the real case upon this record is considered, the question arises, does this writ of error fall within the spirit and intent of the provisions of that section?

It is indisputable that, as the record stands here, this court will not be warranted in rendering any new decree upon the merits; its province can only be to affirm or reverse the decree as made below. The reason, when the case is understood, is very obvious. It was a bill to foreclose a mortgage, and a cross-bill by mortgagor to redeem. The contention was as to the amount of the mortgage debt legally due and unpaid. The transactions were numerous, long continued, and therefore intricate and complex. By the practice in chancery, a reference

to the master to take and state the account, so as to ascertain the sum actually due, was indispensable. The court below made a decretal order of reference, but in giving directions went upon a wrong principle, by directing the master not to take into consideration any payments by the mortgagor of usurious interest.

That such direction was erroneous has been twice decided by the Supreme Court in cases precisely like this. Jenkins v. Greenebaum, 95 Ill. 11; Same v. International Bank, 97 Ib. 568.

Under that direction the master had neither the right or the authority to take and consider proofs of payment of usurious interest, however large the amounts so paid. Gordon v. Hobart, 2 Story R. 260; Remson v. Remson, 2 Johns. Ch. 501; Stonington Savings Bank v. Davis, 2 McCarter, N. J. 31.

Those payments being necessary and proper ingredients in ascertaining the amount actually due from the mortgagor, and being excluded, the case upon this record is not in a condition to justify us in passing upon the merits and rendering any new decree. Our province is simply to affirm or reverse the decree below. The plaintiff in error, therefore, cannot recover anything due to him, or be restored to the possession of anything, real or personal, by this writ of error.

The sages of the law have clearly recognized proceedings by writs of error as presenting two classes of cases and of different nature. Where the plaintiff by his writ of error shall recover, or be restored to any personal thing, as debt, damage or the like, then the proceeding is to be regarded as an action that is *jus prosequendi in judicio quod alicui debetur;* the right to judgment for what is due to any one. Coke, Litt. 2,880; 3 Bac. Abr. Tit. Error L. In Altham's case, 8 Coke, 152 a, 162 b, it is said: "In *scire facias* grounded upon a judgment, a release of all actions is a good plea, because the plaintiff shall have a new judgment; and therefore there it may well be called *jus prosequendi in judicio.* Then the words farther are, *quod alicui debetur,* i. e. which is due to any; so that by release of all actions, real and personal, such actions are only released in which the plaintiff should recover

anything in the realty or the personalty which is due to him, which is included in these words, *quod sibi debetur;* and therefore if a man is outlawed in a personal action, by process upon the original, and brings a writ of error, and defendant pleads against him a release of all actions personal, that is no plea; for by the said action he shall recover nothing that is due to him, but he shall only reverse the outlawry to discharge himself of that disability. So that the said writ of error doth not agree with said description of an action; for it is not *jus prosequendi in judicio quod sibi debetur.*" That is essentially the nature of the case in hand. In a case like this, the object of the writ is not to try the question between the parties, but to try the judgment of the court below, to ascertain whether it has been given in conformity to, or against the law.

In Cohen v. The State of Virginia, 6 Wheat. 409, Chief Justice Marshall said: " A writ of error is defined to be a commission by which the judges of one court are authorized to examine a record upon which a judgment was given in another court, and on such examination, to affirm or reverse the same according to law. If, says my Lord Coke, by the writ of error the plaintiff may recover, or be restored to anything, it may be released by the name of an action. In Bacon's Abridgment, Tit. Error, L., it is laid down that " where by a writ of error the plaintiff shall recover or be restored to any personal thing, as debt, damages or the like, a release of all actions personal is a good plea, and where land is to be recovered or restored in a writ of error, a release of actions real is a good bar; but where, by a writ of error, the plaintiff shall not be restored to any personal or real thing, a release of all actions real or personal is no bar." And for this we have the authority of Lord Coke in his Commentary on Littleton, and in his reports. A writ of error, then, is in the nature of a suit or action when it is to restore the party who obtains it to the possession of anything which is withheld from him, not when its operation is entirely defensive. The effect of a writ of error is simply to bring the record into court and submit the judgment of the inferior tribunal to examination. It does not in any manner act upon the parties; it acts only upon the record."

We do not cite these authorities to show that a writ of error is not a suit within the general meaning of that word, or to controvert the proposition that for many purposes a writ of error is regarded as a new suit; but to aid us in determining whether this writ of error upon the record in this case, which will not warrant us in rendering any new decree, or any decree upon the merits of the controversy between the parties, is to be regarded as a suit or action within the meaning of the provisions of said statute. It was conceded by defendant's counsel, on the argument, that those provisions do not embrace every species of suit or action. They do not embrace a suit or action brought to establish any mere debt, to ascertain its amount and have an adjudication upon it; or to an action at law for the recovery of a debt as to which there is no adverse interest in the thing to be recovered. Neither do they apply to actions to recover damages for an alleged wrongful taking, conversion or injury to property real or personal, unless there is a claim of adverse interest in the property itself or the damages to be recovered, as between the bankrupt or assignee, and the person by or against whom the action is brought. Jenkins, assignee, v. Chicago & N. W. Railway Co. 6 Bradwell, 192, and cases there cited.

If, then, these provisions do not apply to every species of suit, it may be asked: " What marks or designation do you go by, to determine just what suits are subject to the two years' limitation, and what not?" We answer, that we must ascertain the intention of the legislature by the words employed. It seems to us that the suits or actions which are within the limitation have three specific marks of description. The first of these respects the parties. The suit must be between an assignee in bankruptcy and some person who claims an adverse interest in the property or right of property which constitutes the subject-matter of the suit. Secondly, the suit or action must be one which involves or concerns some property or right of property, which is either transferable to, or has become vested in such assignee, as to which or in which the opposite party claims an adverse interest; and lastly, the suit must be of the character known as an action, or if in equity,

in the nature of an action; that is *jus prosequendi in judicio quod alicui debetur.* This last we base upon words employed in defining the term of the limitation, "unless brought within two years from the time *when the cause of action accrued* for or against such assignee." This clearly implies that the suits intended to be subject to the limitation are such as are based upon a cause of action. "A cause of action is said to accrue to any person when that person first comes to a right to bring *an action.*" 1 Bouv. Law Dict. Tit. Cause of Action, p. 247. That phrase, "cause of action accrued," shows that the legis- lature had in view a subject matter on which a suit might be brought; and the word suit at the beginning of the section, when taken in connection with the phrase, "cause of action accrued," was intended to mean only *actions,* or cases in equity, of that nature. This view is strengthened by the declaration in the last branch of the section, that the other provision should not, in any case, revive *a right of action* barred at the time such assignee is appointed.

If we are correct in the foregoing statement of facts and views of the law, then it follows that this case is not within the limitation prescribed by said section; that the plea is bad, and the demurrer to it should be sustained upon the following grounds: The writ of error, under the circumstances of this case, is, as we have seen, merely defensive, and is not in essen- tial characteristics such a suit as is contemplated by the stat- ute. It does not operate upon the parties or the merits of the controversy between them. Its object is not to try the ques- tion between the parties on its merits, but to try the decree of the court below, and ascertain whether it has been given in conformity to or against the law. Cohen v. State of Virginia, 6 Wheat. *supra.* That being the object and scope of this writ of error, it cannot be regarded as a suit between this assignee and any other person touching any property or right of prop- erty claimed adversely by such other person, because it touches and concerns only the decree of the inferior tribunal, and the question of its having been given in conformity to or against the law, and not any adverse claim as to property.

But suppose we are mistaken as to this last position, and it

be conceded that this writ of error involves the controversy between the parties on the merits, would the case then be within the provisions of said section?

This case below was, in substance and legal effect, a bill by mortgagees to foreclose, and a cross-bill by mortgagor to redeem, under the mortgage. The controversy was as to the amount lawfully due from the latter to the former. The fact of the mortgage itself. was not in dispute. Under such relations between the parties, and such position of the case, we confess ourselves unable to perceive or understand how this case involved any claim of an adverse interest in, to, or touching any property or right of property.

Nothing is better settled than that the right of the mortgagee in a mortgage, or of one standing in his place, to foreclose, and that of the mortgagor to redeem, are reciprocal and commensurable. 2 Jones on Mort. Sec. 1146, and cases in note (1.)

In Locke et al. v. Caldwell, 91 Ill. 421, the court, Mr. Justice Sheldon delivering the opinion, said: "In general, the respective rights of mortgagee and mortgagor, with regard to foreclosure on the one hand, and redemption on the other, are treated as *mutual;* that is, the existence of the former is held to include that of the latter, and *vice versa;* and in fact that the one cannot be legally enforced, under the circumstances, is regarded as sufficient to preclude a claim for the other. It is said, 'The right to foreclose and the right to redeem are reciprocal and commensurable.' " 2 Hilliard on Mort. § 2.

It follows from that doctrine, that when complainants below, by bill in equity asserted their right to foreclose, they thereby, necessarily, affirmed Walker's right to redeem. Jenkins, the assignee in bankruptcy, stands in Walker's shoes. To say, therefore, that this suit was one between such assignee and a person claiming an adverse interest in or concerning any property or right of property, is to disregard and ignore all congruity and consonance of ideas, conceptions and principles in jurisprudence, and to maintain that rights which are mutual —that rights which are reciprocal and commensurable, are, at the same time, adverse.

The demurrer of plaintiff in error to defendant's plea of the Statute of Limitations must be sustained; wherefore the decree of the court below will be reversed, and the cause remanded.

Reversed and remanded.